## United States Court of Appeals
### FIFTH CIRCUIT
### OFFICE OF THE CLERK

LYLE W. CAYCE
CLERK

TEL. 504-310-7700
600 S. MAESTRI PLACE
NEW ORLEANS, LA 70130

December 15, 2010

Mr. Nick Lorio
U.S. District Court, Middle District of Louisiana
777 Florida Street
Baton Rouge, LA 70801

    No. 09-31015,  K.P., et al v. Lorraine LeBlanc, et al
        USDC No. 3:07-CV-879

Enclosed, for the Middle District of Louisiana, Baton Rouge only, is a copy of the judgment issued as the mandate.

Enclosed, for the Middle District of Louisiana, Baton Rouge only, is a copy of the court's opinion.

The electronic copy of the record has been recycled.

            Sincerely,

            LYLE W. CAYCE, Clerk

            By: _/s/ Dawn D. Victoriano_
            Dawn D. Victoriano, Deputy Clerk
            504-310-7717

cc: Honorable Ralph E. Tyson
cc: (letter only)
    Mr. Carlton Jones III
    Mr. William E. Rittenberg
    Ms. Stephanie Toti

P.S. to Judge Tyson: A copy of the opinion was sent to your office via email the day it was filed.

MDT-1

UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
November 23, 2010

Lyle W. Cayce
Clerk

No. 09-31015

D.C. Docket No. 3:07-CV-879

K.P.; D.B., M.D.; HOPE MEDICAL GROUP FOR WOMEN,

       Plaintiffs - Appellants

v.

LORRAINE LEBLANC, in her official capacity as Executive Director of the Louisiana Patient's Compensation Fund Oversight Board; CLARK COSSE, in his official capacity as a member of the Louisiana's Patient's Compensation Fund Oversight Board; MELANIE FIRMAN, in her official capacity as a member of the Louisiana Patient's Compensation Fund Oversight Board; VINCENT CULOTTA, in his official capacity as a member of the Louisiana Patient's Compensation Fund Oversight Board; WILLIAM SCHUMACHER, in his official capacity as a member of the Louisiana Patient's Compensation Fund Oversight Board; JOSEPH DONCHESS, in his official capacity as a member of the Louisiana Patient's Compensation Fund Oversight Board; DIONNE VIATOR, in her official capacity as a member of the Louisiana Patient's Compensation Fund Oversight Board; DANIEL LENNIE, in his official capacity as a member of the Louisiana Patient's Compensation Fund Oversight Board; MANUEL DEPASCUAL, in his official capacity as a member of the Louisiana Patient's Compensation Fund Oversight Board,

       Defendants - Appellees

Appeal from the United States District Court for the
Middle District of Louisiana, Baton Rouge

Before DENNIS, OWEN, and SOUTHWICK, Circuit Judges.

## JUDGMENT

This cause was considered on the record on appeal and was argued by counsel.

It is ordered and adjudged that the judgment of the District Court is reversed, and the cause is remanded to the District Court for further proceedings in accordance with the opinion of this Court.

IT IS FURTHER ORDERED that defendants-appellees pay to plaintiffs-appellants the costs on appeal to be taxed by the Clerk of this Court.

DENNIS, Circuit Judge, concurring:

ISSUED AS MANDATE: 15 DEC 2010

A True Copy
Attest

Clerk, U.S. Court of Appeals, Fifth Circuit

By: _____
Deputy

New Orleans, Louisiana    15 DEC 2010

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
November 23, 2010

Lyle W. Cayce
Clerk

No. 09-31015

K.P.; D.B., M.D.; HOPE MEDICAL GROUP FOR WOMEN,

        Plaintiffs - Appellants

v.

LORRAINE LEBLANC, in her official capacity as Executive Director of the Louisiana Patient's Compensation Fund Oversight Board; CLARK COSSE, in his official capacity as a member of the Louisiana Patient's Compensation Fund Oversight Board; MELANIE FIRMAN, in her official capacity as a member of the Louisiana Patient's Compensation Fund Oversight Board; VINCENT CULOTTA, in his official capacity as a member of the Louisiana Patient's Compensation Fund Oversight Board; WILLIAM SCHUMACHER, in his official capacity as a member of the Louisiana Patient's Compensation Fund Oversight Board; JOSEPH DONCHESS, in his official capacity as a member of the Louisiana Patient's Compensation Fund Oversight Board; DIONNE VIATOR, in her official capacity as a member of the Louisiana Patient's Compensation Fund Oversight Board; DANIEL LENNIE, in his official capacity as a member of the Louisiana Patient's Compensation Fund Oversight Board; MANUEL DEPASCUAL, in his official capacity as a member of the Louisiana Patient's Compensation Fund Oversight Board,

        Defendants - Appellees

Appeal from the United States District Court
for the Middle District of Louisiana

Before DENNIS, OWEN, and SOUTHWICK, Circuit Judges.

Leslie H. Southwick, Circuit Judge:

Physicians enrolled in the Louisiana Patient's Compensation Fund challenge the constitutionality of a state statute denying abortion providers the benefits of participation in the Fund. They seek to enjoin the Patient's Compensation Fund Oversight Board from using that statute to prevent processing and paying of abortion-related claims. The district court determined that the members of this Board were entitled to Eleventh Amendment immunity because they lacked sufficient connection with the challenged statute. We disagree and therefore REVERSE and REMAND.

## I. STATEMENT OF FACTS

Hope Medical Group for Women ("Hope") provides women's health services, including elective abortions, in Shreveport, Louisiana. Plaintiffs K.P. and D.B. are both physicians who perform abortions at Hope.

Both K.P and D.B. are enrolled in the Louisiana Patient's Compensation Fund. The Fund was created by the 1975 Medical Malpractice Act ("the Med-Mal Act") in an effort to control the costs of medical malpractice insurance. The Fund's purpose is to make uniform compensation to patients claiming injuries as a result of medical malpractice. The Fund is a voluntary program for which all licensed and certified healthcare providers are eligible.

Participation in the program requires a healthcare provider to file an application and proof of financial responsibility with the Patients' Compensation Fund Oversight Board ("the Board"), which administers the Fund. Financial responsibility can be shown either by medical malpractice insurance coverage or $125,000 in cash or cash equivalents. Participating providers must also pay annual surcharges based on the risks associated with their respective practices and the claims history in those areas.

Healthcare providers that meet these requirements and pay the applicable charges are deemed qualified and are issued a certificate of enrollment. Once enrolled in the program, providers are eligible for significant benefits. Among

these benefits is a cap on medical malpractice liability. A Fund participant's personal liability is limited to $100,000. Any damages in excess of that amount are paid by the Fund. Total recovery is limited to $500,000 plus future medical expenses. Qualified providers are also entitled to a medical review panel's expert opinion on whether the provider violated the standard of care. The panel's report is admissible in any subsequent civil proceeding.

In June 2007, a former Hope patient named Brittany Prudhome requested the formation of a Fund medical review panel to assess claims for injuries sustained during an abortion at Hope. Prudhome's complaint sought damages for medical negligence. She identified as defendants Doctors K.P. and D.B., as well as the clinic.

After reviewing her claim, the Board in July 2007 informed Prudhome that neither K.P. nor D.B. was qualified for Fund coverage as to her claim. The Board cited Louisiana Revised Statute Section 9:2800.12 as the reason it refused Prudhome's claim. That 1997 statute defines the tort liability of physicians who perform abortions. A doctor is liable for "any damage occasioned or precipitated by the abortion," including "injuries suffered or damages occasioned by the unborn child . . . ." La. Rev. Stat. Ann. § 9:2800.12(A), (B)(2). It further provides that "laws governing medical malpractice or limitations of liability thereof provided in [the Medical Malpractice Act] are not applicable to this Section." *Id.* § 9:2800.12(C)(2).

Based on Section 9:2800.12, the Board reasoned that abortion providers were not entitled to participate in the Fund for abortion-related procedures. Despite the two doctors' enrollment in the Fund, the Board refused to convene a review panel to hear Prudhome's complaint. Prudhome subsequently filed suit against the doctors and Hope in state court.

In November 2007, the doctor identified as K.P. filed suit in the United States District Court for the Middle District of Louisiana. The Defendants were

3

the members of the Board and also Lorraine LeBlanc, the Fund's Executive Director, named in their official capacities. Later, Hope and the doctor identified as D.B. became Plaintiffs. The suit challenged the constitutionality of Section 9:2800.12 both on its face and as applied. Specifically, Plaintiffs contended that the statute is unconstitutionally vague and violates the rights of physicians and their patients to equal protection and privacy as guaranteed by the Fourteenth Amendment. Plaintiffs requested declaratory and injunctive relief.

The Defendants filed a motion to dismiss on the grounds that they are immune from suit under the Eleventh Amendment. The district court dismissed the action, concluding that the statute in question did not charge these defendants with any particular enforcement authority. This appeal followed.

## II. DISCUSSION

*A. Mootness*

After litigation commenced in this case, the Board in March 2008 agreed to convene a medical review panel to assess Prudhome's claims. In correspondence with Prudhome's attorney, the Board expressed a willingness to review the merits of her action but reserved the right to refuse payment if the Board later determined that abortion-related procedures were not covered by the Med-Mal Act. Defendants now assert that their determination to admit Prudhome's claim against the Plaintiffs moots this action.

Mootness exists when the actual controversy among the parties has ended. *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006). If accepting the claim for processing gives to the Plaintiffs everything the Defendants could properly be ordered to do by a court in this lawsuit, mootness might have arisen. The constitutional issues at the core of this litigation would be for another cast of players.

To understand whether the case is moot, we need to understand the role of the Defendants regarding a claim such as that presented by Prudhome.

Among the actions the Board takes is to decide – as a gatekeeper, to use the parties' word – whether the claim is one it may accept. The Board has now changed positions on that, from its July 2007 denial to its March 2008 acceptance. In a latter dated March 12, 2008, the Board stated that the claim would be considered by a medical review panel. Relevant to mootness, though, the Board reserved its right to deny the coverage of the Fund if it is determined that the claim was not "malpractice" as defined by state law. The reservation was capitalized, presumably, because of its importance:

> THE PATIENT'S COMPENSATION FUND AND THE OVERSIGHT BOARD RESERVE THE RIGHT TO DENY PCF COVERAGE FOR THOSE ALLEGATIONS DETERMINED TO BE OUTSIDE OF THE SCOPE OF MALPRACTICE AS DEFINED IN THE MEDICAL MALPRACTICE ACT.

Section 9:2800.12 was not cited, but it was the unnamed potential barrier to use of the Fund. The Board did not commit the medical review panel to completing its usual process for a claim and preparing a report.

The difficulties the panel would have in preparing a report can be seen from the panel procedures and responsibilities set out at some length in a section of the Med-Mal Act. *See* La. Rev. Stat. Ann. § 40:1299.47. The panel is to receive evidence, consult with experts if it desires, and then "express its expert opinion as to whether or not the evidence supports the conclusion that the defendant or defendants acted or failed to act within the appropriate standards of care." *Id.* § 1299.47(F), (G). The panel report is admissible in a medical malpractice action. *Id.* § 1299.47(H). Section 9:2800.12, though, might make the report irrelevant because it provides that no standard of care will apply to damages resulting from abortions. *Id.* § 9.2800.12. Thus, it could be that the panel or the Board may decide that the report is useless to an abortion claim under Section 9:2800.12 and end up not preparing one. We find no concession

5

by the Defendants that the medical review panel will actually prepare a report that will state an opinion on whether medical malpractice occurred.

The Board would again become involved in a claim such as Prudhome's at least by the time of a settlement between a patient and the abortion providers, or after a civil action were concluded. That is when the Board would decide whether an amount greater than the $100,000 that the medical provider has to pay should be paid by the Fund. *Id.* § 1299.44(B)(2)(A). We do not see specific reference in that section to an obligation of the Board to determine whether the claim is one covered by the Fund. Elsewhere, though, the Med-Mal Act declares that the Fund is not "liable for any sums except those arising from medical malpractice." *Id.* § 1299.41(I). The Med-Mal Act under which the Fund operates is specifically made inapplicable by Section 9:2800.12.

We know from the evidence that the Board has taken the position that the Fund is not available to pay claims that are affected by Section 9:2800.12. That view is unremarkable, as the statute clearly prohibits use of the Fund for abortion claims that are brought under Section 9:2800.12. A Louisiana "administrative agency does not have the authority to determine the constitutionality of statutes." *Albe v. La. Workers Comp. Corp.*, 700 So. 2d 824, 828 (La. 1997). The Board has to apply statutes as written. This litigation calls on the Board to defend the statute, not to question it.

The only basis argued for mootness is that in March 2008, the Board agreed after this litigation commenced to have the Prudhome claim considered by a medical review panel. At best, this is a voluntary cessation of one effect of the earlier announced refusal to allow use of the Fund for abortion claims. Voluntary cessation even of all the conduct being challenged in a lawsuit does not moot a case. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 324 (5th Cir. 2009). A defendant, without court compulsion, could legally return to its former ways. The defendants, who are the ones asserting mootness, must convince us

6

that there is no reasonable prospect that what the plaintiffs allege as the cause of their injury will recur. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 189 (2000). We are not convinced.

This suit is not moot.

B. *Standing*

Neither party has raised the issue of standing. We should address standing, though, when there exists a significant question about it. *See Doe v. Tangipahoa Parish Sch. Bd.*, 473 F.3d 188, 194 (5th Cir. 2006). We raise the point because of the similarity of the present action to a case heard en banc by this court in 2001. *Okpalobi v. Foster*, 244 F.3d 405 (5th Cir. 2001) (en banc). There, a physician who performed abortions challenged the constitutionality of Section 9:0028.12. *Id.* at 409. Like the Plaintiffs here, a doctor sought to enjoin enforcement of the statute. *Id.* Named as defendants in that suit were the Attorney General and the Governor of Louisiana, who asserted Eleventh Amendment immunity as a defense. *Id.* at 410.

The district court in *Okpalobi* declared the statute unconstitutional; a panel of this Court affirmed. *Okpalobi v. Foster*, 190 F.3d 337 (5th Cir. 1999), *superseded by Okpalobi*, 244 F.3d 405 (en banc). The en banc Court reversed the district court because ten of the fourteen judges agreed that the Plaintiffs lacked Article III standing. *Okpalobi*, 244 F.3d at 429.

Article III of the United States Constitution grants jurisdiction to the federal courts only over claims that constitute "cases" or "controversies." U.S. Const. art. III, § 2, cl. 1. Federal courts should exercise power only "in the last resort[ ] and as a necessity . . . and only when adjudication is consistent with a system of separated powers and the dispute is one traditionally thought to be capable of resolution through the judicial process." *Allen v. Wright*, 468 U.S. 737, 752 (1984) (citations, brackets, and quotation marks omitted).

Article III standing requires an injury-in-fact caused by a defendant's challenged conduct that is redressable by a court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). We discuss all three components.

*1. Injury-in-fact*

An injury sufficient to confer standing is both "concrete and particularized" and "actual or imminent." *Croft v. Governor of Tex.*, 562 F.3d 735, 745 (5th Cir. 2009). The initial alleged injury was the failure of the defendants to convene a medical review panel. A panel was subsequently convened, a fact we discussed earlier regarding mootness. Plaintiffs also complain that they sustained actual pecuniary injuries when they were refused the benefits otherwise associated with their paid membership in the Fund. For example, they are subject to unlimited liability for the performance of abortion procedures because the liability caps of the Fund are not being applied to their abortion patients. The uncapped liability likely affects malpractice insurance rates.

We conclude that being denied these and other protections of the Med-Mal Act is a "direct pecuniary injury" that generally is sufficient to establish injury-in-fact. *See Henderson v. Stalder*, 287 F.3d 374, 379 (5th Cir. 2002).

Admittedly, the injury alleged here is not as concrete as some might be. The Plaintiffs' liability for suits filed by Prudhome or other future patients has not yet materialized. Still, both this court and the Supreme Court have generally permitted future events which are sufficiently likely to occur to serve as a basis for standing when the plaintiffs, as here, are seeking injunctive relief. For example, the Supreme Court has determined that a "real and immediate threat of future injury" is sufficient to confer standing to pursue an injunction so long as that threat is not merely conjectural. *City of L.A. v. Lyons*, 461 U.S. 95, 107 n.8 (1983). We have also held that in order to have standing to seek injunctive relief, plaintiffs must demonstrate that they are "likely to suffer future injury by the defendant." *James v. City of Dallas*, 254 F.3d 551, 563 (5th

8

Cir. 2001). Given the imminent threat posed by Prudhome's suit – and the probability of future suits of the same type – it is sufficiently likely that the physicians will face liability for abortion-related procedures.

Plaintiffs have alleged a sufficient injury-in-fact.

2. *Causation*

Whether a defendant's actions caused a plaintiff's injuries must be assessed. The Defendant Board is responsible for administering the benefits the Plaintiffs claim to have been denied. Members of the Board serve as initial arbiters of compensable claims under the Fund. Although the Board cannot prevent a private litigant from pursuing relief in Louisiana court, it can unilaterally preclude the Plaintiffs from claiming the benefits of limited liability and independent medical review. It can subsequently refuse to recognize the right to call on the Fund to pay a settlement or court judgment. This places the Defendants among those who would contribute to Plaintiffs' harm. The Board is the body with the initial authority to disburse or withhold the benefits associated with Fund membership.

Although the Board's decision could be overridden by a court, that does not block the tracing of the injury to these Defendants. Tracing an injury is not the same as seeking its proximate cause. *Bennett v. Spear*, 520 U.S. 154, 168-69 (1997). Because the Defendants significantly contributed to the Plaintiffs' alleged injuries, Plaintiffs have satisfied the requirement of traceability.

3. *Redressability*

Redressability was a key basis for the *Okpalobi* court's holding that those plaintiffs did not have standing. *Okpalobi*, 244 F.3d at 426-28. The court concluded that the Governor and Attorney General could not prevent private litigants from prosecuting causes of action pursuant to Section 9:2800.12. *Id.* at 428-29. The Board cannot either. The Board can, though, start the process for considering a claim against an abortion provider under the Med-Mal Act, or it

can refuse to do so. Until March 2008, it refused. Even if the Board convenes a medical review panel, what the panel would do is unclear. It is supposed to state an opinion about whether a physician has met the standard of care. For abortion claims under Section 9:2800.12, though, such a standard may not matter. Finally, the Board can refuse to pay a claim if it determines malpractice legally was not involved.

We acknowledge that the Board is far from the sole participant in the application of the challenged statute. For example, litigants may bypass the Board and proceed directly in the courts. But at several points, Section 9:2800.12 impacts the Board's actions sufficiently to confer standing on these Plaintiffs. "[A] plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself. He need not show that a favorable decision will relieve his *every* injury." *Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982). This distinguishes the Board's role from that of the Governor and Attorney General in *Okpalobi*. Those two officials were found not to have "any duty or ability to do *anything*" relating to enforcement of the statute. *Okpalobi*, 244 F.3d at 427. Here, the Board has definite responsibilities relating to the application of Section 9:2800.12. Perhaps this distinction was sufficiently obvious that the Defendants decided not to contest standing.

Plaintiffs have standing to seek relief from these Defendants.

C. *Eleventh Amendment Immunity*

The Eleventh Amendment bars suits by private citizens against a state in federal court. *See Hutto v. Finney*, 437 U.S. 678, 700 (1978). The bar applies not only to the state itself, but also protects state actors in their official capacities. *See Nelson v. Univ. of Tex. at Dallas*, 535 F.3d 318, 320 (2008).

We review *de novo* a district court's order granting a motion to dismiss on Eleventh Amendment grounds. *Hudson v. City of New Orleans*, 174 F.3d 677, 682 (5th Cir. 1999).

No. 09-31015

The Supreme Court carved out a narrow exception to the Eleventh Amendment in *Ex Parte Young*, 209 U.S. 123 (1908). The rule is based on the legal fiction that a sovereign state cannot act unconstitutionally. *Id.* at 159. Thus, where a state actor enforces an unconstitutional law, he is stripped of his official clothing and becomes a private person subject to suit. *Id.* at 160.

In order to use the *Ex Parte Young* exception, a plaintiff must demonstrate that the state officer has "some connection" with the enforcement of the disputed act. *Id.* at 157. The connection requirement exists to prevent litigants from misusing the exception. There are plenty of state actors. A plaintiff must show that the defendant state actors "have the requisite 'connection' to the statutory scheme to remove the Eleventh Amendment barrier to suits brought in federal court against the State." *Okpalobi*, 244 F.3d at 410-11.

*Ex Parte Young* gives some guidance about the required "connection" between a state actor and an allegedly unconstitutional act. "The fact that the state officer, by virtue of his office, has some connection with the enforcement of the act, is the important and material fact, and whether it arises out of the general law, or is specially created by the act itself, is not material so long as it exists." *Ex Parte Young*, 209 U.S. at 157.

Defendants rely heavily on the lead opinion in *Okpalobi* for the proposition that a "special" relationship – not just "some connection" – needs to exist. *Okpalobi*, 244 F.3d at 414. Because that part of the en banc opinion did not garner majority support, the Eleventh Amendment analysis is not binding precedent. *See United States v. Ferguson*, 211 F.3d 878, 885 (5th Cir. 2000).

We need not resolve whether *Ex Parte Young* requires only "some connection" or a "special relationship" between the state actor and the challenged statute. We conclude that the Board falls within *Ex Parte Young* under either standard. As noted above, the state actor must be connected with an act's "enforcement" for the exception to apply. *Ex Parte Young*, 209 U.S. at

11

157. "Enforcement" typically involves compulsion or constraint. Webster's Third New International Dictionary 751 (1993). By excluding abortion-related procedures from the coverage of the Med-Mal Act, Section 9:2800.12(C) implicitly requires the Board to differentiate between claims allowable and not allowable under the statute. By saying that only malpractice claims can be paid from the Fund, the Med-Mal Act also requires the Board to determine whether a claim presented to it has been statutorily excluded by Section 9:2800:12 from coverage. La. Rev. Stat. Ann. § 40:1299.41(I).

In summary, the Board's role starts with deciding whether to have a medical review panel consider abortion claims and ends with deciding whether to pay them. By virtue of these responsibilities, Board members are delegated some enforcement authority. Indeed, the evidence in this record indicates that the Board took an active role in enforcing Section 9:2800.12 as to Brittany Prudhome. When she brought her claim to the Board, she was instructed that she was without recourse under the Fund and should instead submit her claim to the courts. The Board enforces Section 9:2800.12 by applying its prohibitions.

The Defendants have the requisite connection with Section 9:2800.12 to fall within the *Ex Parte Young* exception. Consequently, this suit is not barred by the Eleventh Amendment.

We REVERSE and REMAND for further proceedings.

DENNIS, Circuit Judge, concurring.

I fully concur in Judge Southwick's opinion for the court, but also write separately to make a few additional observations. The Louisiana statute that the plaintiffs seek to challenge, La. Rev. Stat. Ann. § 9:2800.12, contains an ambiguity which, although not dispositive, is relevant to the standing and Eleventh Amendment analyses. Judge Southwick's opinion refrains from addressing this ambiguity, but quite rightly holds that the plaintiffs in this case have standing and that the suit is not barred by the Eleventh Amendment regardless of how the ambiguity should be resolved. However, my agreement with the court's holdings is strengthened by my understanding of the meaning and effect of § 9:2800.12, which is as follows.

Section 9:2800.12(A) creates a private civil cause of action under which "[a]ny person who performs an abortion is liable to the mother of the unborn child for any damage occasioned or precipitated by the abortion." The statute does not specify a standard of care; consequently, as Judge Southwick's opinion indicates, the statute seems to implicitly impose strict liability, regardless of fault, on health care providers who perform abortions.[1] Further, the statute provides that Louisiana's statutory regime governing medical malpractice does not apply to actions brought under § 9:2800.12 for damage related to abortions. *Id.* § 9:2800.12(C)(2). However, the statute is silent as to whether a patient who has suffered some harm arising from an abortion can still bring an ordinary medical malpractice action under preexisting law, as with any other medical

---

[1] A panel of this court previously concluded that the statute provides for strict liability. *Okpalobi v. Foster*, 190 F.3d 337, 360 (5th Cir. 1999), *vacated on other grounds*, 244 F.3d 405 (5th Cir. 2001) (en banc). However, the defendants disagree with this reading and argue that "the statute, read *in pari materia* with all of Louisiana tort law, requires proof of negligence." Appellees' Brief 6 n.3. We do not need to decide on the exact nature or scope of the right of action created by § 9:2800.12(A) in order to resolve the issues presented by this appeal.

procedure, or whether such a patient's only recourse is to bring a strict liability action under § 9:2800.12.

Since § 9:2800.12 is silent on the matter, I believe the Louisiana legislature did not mean to impliedly prevent patients from bringing claims under ordinary medical malpractice law for damages arising from abortions. Indeed, Brittany Prudhome, the former patient who sued K.P., D.B., and Hope Medical for damages arising from an abortion, appears to have sought to bring an ordinary malpractice claim rather than a strict liability claim under § 9:2800.12.[2] Prudhome's counsel's letter to LeBlanc, in which she requested that a medical review panel be convened, referred to her claim as a "medical negligence claim" and asserted that K.P., D.B, and Hope Medical "failed to meet the appropriate standard of medical care." The letter made no mention of strict liability or § 9:2800.12.

The Board, in its response to Prudhome and in its communications with K.P., D.B., and Hope Medical, appears to have taken the position that it must deny health care providers all the benefits of the Louisiana Patients' Compensation Fund with regard to any claim arising from an abortion, even an ordinary medical malpractice claim. These benefits, as Judge Southwick's opinion explains, include the convening of medical review panels, the limitation of liability to $100,000, and the ability to self-insure by depositing $125,000 with the Board.

---

[2] This may well have been a reasonable legal strategy on Prudhome's part, since the strict liability cause of action under § 9:2800.12(A) may be unconstitutional, as the panel decision in *Okpalobi* held it was. *Okpalobi v. Foster*, 190 F.3d 337, 359-60 (5th Cir. 1999), *vacated on other grounds*, 244 F.3d 405 (5th Cir. 2001) (en banc). If Prudhome believed she could show that K.P., D.B., and Hope Medical breached the relevant standard of care, then she would not have needed to rely on strict liability in order to recover damages.

No. 09-31015

The Board's denial of these three benefits to K.P., D.B., and Hope Medical (with respect to Prudhome's claim in particular, and with respect to abortion-related malpractice claims in general) constitutes three concrete and particularized injuries, each of which independently satisfies the injury-in-fact requirement of Article III standing.[3] The Board's refusal to convene a medical review board has already taken place and, as Judge Southwick's opinion explains, it is not moot. The denial of a medical review board concretely injured K.P., D.B., and Hope Medical because medical review boards benefit health care providers by facilitating the dismissal of meritless malpractice suits and aiding in the settlement of suits that appear to be meritorious.[4] Although Prudhome's suit has not yet been resolved, the Board's apparent policy of refusing to pay abortion-related malpractice claims in excess of $100,000 also causes concrete pecuniary injury to the plaintiffs by effectively raising their cost of obtaining malpractice insurance.[5] *See Henderson v. Stalder*, 287 F.3d 374, 379 (5th Cir. 2002) ("a direct pecuniary injury" is "an injury in fact"). Likewise, by refusing Patients' Compensation Fund coverage for all abortion-related malpractice

---

[3] *See, e.g., Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (explaining that Article III standing requires an "injury in fact" which is "concrete and particularized" and "actual or imminent").

[4] *See Everett v. Goldman*, 359 So. 2d 1256, 1264 (La. 1978) ("Pretrial screening through a medical review panel is designed to weed out frivolous claims without the delay or expense of a court trial. It is thought that the use of such panels will encourage settlement because both parties will be given a preliminary view of the merits of the case."). Thus, regardless of whether Prudhome's malpractice claim has any merit, K.P., D.B., and Hope Medical were injured by the Board's refusal to convene a review panel to assess whether they had violated the relevant standard of care.

[5] The $100,000 cap on liability for participating health care providers was designed to make malpractice insurance more affordable. *See Descant v. Adm'rs of Tulane Educ. Fund*, 639 So. 2d 246, 248 (La. 1994) ("In part, the [Medical Malpractice] Act was designed to increase the likelihood that health care providers would carry malpractice insurance by regulating the total damage recovery of malpractice victims, thereby reducing insurance premiums.").

No. 09-31015

claims, the Board denies K.P., D.B., and Hope Medical the financially beneficial opportunity to self-insure with respect to such claims by depositing $125,000 with the Board. All three of these injuries are concrete and immediate, not abstract or speculative; they plainly fulfill the injury-in-fact requirement. Moreover, the injuries are obviously directly caused by the Board's decisions, and could be redressed by an injunction requiring the Board to treat abortion-related malpractice claims the same way it treats other malpractice claims.[6] Thus, based on my reading of § 9:2800.12, I conclude that the facts as alleged by the plaintiffs easily fulfill the three requirements of Article III standing.

Regarding the Eleventh Amendment issue, I fully agree with Judge Southwick's discussion of *Ex parte Young* and *Okpalobi*. However, the opinion's conception of "enforcement" as involving compulsion or constraint seems to me to be unnecessarily restrictive. In a legal sense, to "enforce" a law or regulation simply means "[t]o give force or effect" to it. *Black's Law Dictionary* (8th ed. 2004). There is no need to ask whether the Board has done anything that amounts to compulsion or constraint. The Board has plainly given force and effect to its interpretation of § 9:2800.12, by refusing to convene a medical review panel and by denying the other benefits of the Fund to K.P., D.B., and Hope Medical. Moreover, the defendants have expressly stated, in a filing in the district court, that the Board has a "gatekeeping function." Because the Board has actually enforced § 9:2800.12 by engaging in "gatekeeping," it undeniably has the "connection with the enforcement of the act" that is required under *Ex parte Young*, 209 U.S. 123, 157 (1908).

---

[6] *See Lujan*, 504 U.S. at 560-61 (stating that the three elements of Article III standing are injury-in-fact, causation, and redressability).

16

No. 09-31015

With these observations, I join the court's opinion.